**B.B. & J., A Vermont Limited Partnership and William F. Pryme and Brian N. Pryme v. Melvin G. and Luella B. Bedell**

[591 A.2d 50]

No. 89-238

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed January 25, 1991

Motion for Reargument Denied March 20, 1991

*Polow & Polow*, Hyde Park, for Plaintiffs-Appellees.

*Valsangiacomo, Detora, McQuesten, Rose & Grearson*, Barre, for Defendants-Appellants.

Allen, C.J. Defendants appeal from the jury's compensatory damages award in plaintiffs' action for breach of the covenant of quiet enjoyment implied in the lease between plaintiffs and defendants. We reverse and remand for a new trial on the issue of compensatory damages alone.

On May 29, 1987, plaintiffs, acting through a limited partnership entitled B.B. & J., leased from defendants the Hayloft Restaurant in Morrisville, Vermont, for a period of one year. Within two weeks of entering the lease plaintiffs received their first indication of a problem with their water supply. The results of a test of the restaurant's water taken on June 4 were returned, stating that the water was contaminated. The next few months witnessed a series of conflicting tests, a notice from the Vermont Department of Health instructing plaintiffs to boil their water and warning of a possible suspension of the restaurant's license, a temporary shutting off of plaintiffs' water without warning, and two periods during which the water was brown, sedimentary, and "odoriferous." During the first such period plaintiffs were forced to close for two days. Following the second period, which occurred in late September, plaintiffs closed the restaurant and vacated the premises.

Plaintiffs' claim as finally submitted to the jury was for breach of the covenant of quiet enjoyment implied in the lease between plaintiffs and defendants. Defendants counterclaimed for unpaid rent and certain unpaid bills. The jury found on the interrogatory submitted by the court that defendants breached the covenant of quiet enjoyment, and awarded compensatory damages and attorney's fees to plaintiffs. The jury also found against defendants on their counterclaim. Following denial of their motion in the alternative for judgment notwithstanding the verdict or for new trial, defendants brought a timely appeal to this Court.

Defendants raise two issues on appeal. The first is that the damage award is not supported by the evidence. The second is that the jury was prejudiced by admission into evidence of testimony regarding defendants' financial holdings. Because we reverse and remand on defendants' first ground, we do not reach the second.

■ A motion to set aside a verdict as being without evidentiary support will fail "if the record contains any evidence that

'fairly and reasonably' tends to support the jury's verdict." *Champlain Oil Co. v. Trombley*, 144 Vt. 291, 295, 476 A.2d 536, 538 (1984) (quoting *Smith v. Blow & Cote, Inc.*, 124 Vt. 64, 66, 196 A.2d 489, 491 (1963)). In ruling on a motion for judgment notwithstanding the verdict, "we must view the evidence in the light most favorable to the nonmoving party, excluding the effect of any modifying evidence." *Kinzer v. Degler Corp.*, 145 Vt. 410, 412, 491 A.2d 1017, 1018 (1985). Ultimately, the question to be resolved is "whether the result reached by the jury is sound in law on the evidence produced." *Id.*

■ We conclude that the result reached by the jury on the issue of damages is not "sound in law on the evidence produced." Without defining the extent to which compensatory damages are available in an action for breach of an implied covenant of quiet enjoyment, it is clear that, at a minimum, damages for such a breach must have been caused by the breach. It is axiomatic that plaintiffs can be compensated only for those damages which proximately resulted from defendants' breach. See *Vermont Electric Supply Co. v. Andrus*, 135 Vt. 190, 192, 373 A.2d 531, 532 (1977) ("in a contract action one can only recover the natural and proximate damages caused by the injury"); *Norton & Lamphere Construction Co. v. Blow & Cote, Inc.*, 123 Vt. 130, 138, 183 A.2d 230, 236 (1962) ("The general rule is that in an action of contract the damages must be the direct, natural result of the breach . . . ."); 5 A. Corbin, Corbin on Contracts § 997, at 21 (1964) ("a causal relation [must] be shown to exist between the defendant's conduct and the harm for which damages are sought").

Plaintiffs in this case have failed to show that their damages were proximately caused by defendants' breach. Plaintiffs' evidence on damages consisted almost exclusively of two exhibits: their partnership income tax return showing a business loss from the restaurant, and a list of additional expenses not reflected in the income tax return. The business loss calculation on plaintiffs' partnership income tax return showed the gross receipts of the business minus allowable expenses and deductions. No attempt was made by plaintiffs to attribute any of the expenses or deductions to defendants' breach of the covenant of quiet enjoyment. Likewise, the additional expenses listed— taxes due the State of Vermont and the federal government, and

bills for food, linen, a newspaper subscription, and gas—in no way were attributed by plaintiffs to defendants' breach.[1]

 The source of plaintiffs' error is easily grasped. Plaintiffs sought to recover as damages all of their losses associated with the business operated on the leased premises. Plaintiffs assert on appeal that such a recovery is necessary for them "to be made whole." Yet what plaintiffs fail to appreciate is that they are entitled "to be made whole" only to the extent that they were injured by defendants' breach.[2]

We decline, however, to acquiesce in defendants' request for a reversal and entry· of judgment in their favor. Plaintiffs have established defendants' breach of the implied covenant of quiet enjoyment, and the merits of this determination have not been contested on appeal. Further, it appears that some damage occurred as a result of the breach. We therefore remand the cause for a new trial on the question of damages to prevent a failure of justice. *Hathaway v. Ray's Motor Sales, Inc.*, 127 Vt. 279, 282, 247 A.2d 512, 514 (1968) ("While we might enter judgment for

---

[1] Searching the record, the only evidence which bears even a remote relation to establishing a causal link between defendants' breach and plaintiffs' damages was plaintiff William Pryme's testimony that a special dinner was can-celled because of water problems, that part of a four hundred and seven dollar phone bill concerned water problems, and that inventory was lost upon plaintiffs' cessation of the business. Without deciding whether all of these items are cognizable in a suit for breach of an implied covenant of quiet enjoyment, or whether they were proximately caused by the breach in this case, and overlooking the fact that even proximately caused damages must be established with reasonable certainty as to amount, *Berlin Development Corp. v. Vermont Structural Steel Corp.*, 127 Vt. 367, 372, 250 A.2d 189, 193 (1968), it is clear that these items do not come close to supporting the jury's compensatory award of seventeen thousand dollars.

[2] Plaintiffs point us to the Restatement (Second) of Contracts § 344(b) (1981), which defines a promisee's reliance interest as "his interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract not been made." This definition does not take the causation requirement out of the law of reliance damages. Rather, it expressly limits such damages to "loss *caused* by reliance." See *Norton & Lamphere Construction Co.*, 123 Vt. at 136, 183 A.2d at 235 (reliance damages must be "such as fairly and reasonably may be considered as arising naturally from the breach of the contract itself"). It simply cannot be said that plaintiffs' expenses as presented on the record below constituted "loss[es] caused by reliance" on the existence of an unbreached lease.

the defendant on this state of the record, discretion persuades us that justice would be better served by remanding . . . ."); *Wing Memorial Hospital Ass'n v. Town of Randolph,* 120 Vt. 277, 284, 141 A.2d 645, 651 (1957) ("to assure full consideration of all issues, remand is ordered"); *Essex Chair Co. v. Fine Furniture Co.,* 116 Vt. 145, 148, 70 A.2d 578, 581 (1950) ("Enough appears in the record to satisfy us that the plaintiff may well have a meritorious case if the facts are properly presented and found, and we think he should have an opportunity to have this done."). Accordingly, we reverse the trial jury's compensatory damages award and remand on this issue alone.[3]

*Reversed and remanded.*

**Morse, J.,** dissenting. I respectfully dissent because a remand for a new trial on damages will not "prevent a failure of justice."

At the close of plaintiff's case and again at the close of the evidence, defendants moved for a directed verdict on the ground that plaintiff had not proved the amount of damages suffered as a result of defendants' breach. Although plaintiff alleged total business losses of more than $28,000, jurors were left to speculate about what portion of that amount was caused by defendants as opposed to other causes. The trial court, as the Court today holds, erred in denying all motions for directed verdict and the motion for j.n.o.v.

Plaintiff was not ambushed; it knew defendants had made a challenge that its case on damages had not been proved. Plaintiff nevertheless chose to stand pat on the evidence. Even the jury was aware of the deficiency in the evidence. During deliberation, a note was submitted asking,

> If we decide the defendants breached the covenant of quiet enjoyment and we feel the evidence shows the breach caused damages, but that the evidence does not show the amount of damages, must we award all or nothing?

After the court answered "no" to this question, the jury asked a second question:

---

[3] Plaintiffs have asked this Court to recognize and reserve their right to apply to the trial court for the cost of attorney's fees incurred on appeal. Given our disposition, plaintiffs' request is denied.

We are confused. Your instructions say our award should not be based on speculation or guesswork, so how would we arrive at any other amount?

The trial court then instructed the jury to do the impossible, "You have to look at all of the evidence," of which there was none. The jury's award of $17,000 compensatory damages was obviously a number picked out of the air (somewhere between zero and the total amount asked by plaintiff).

Having decided to rest its case on the evidence presented, despite a motion for a directed verdict, why should plaintiff have a second chance? We do not ordinarily grant, and cannot often afford to give, plaintiffs new trials when the evidence is insufficient, as was the case here.

The Court's only authority for a second "bite of the apple" are cases over twenty years old. These cases are anomalies and obviously do not require the result in this case. Although, in a compelling case, the Court may provide a particularly deserving litigant a new trial, there is nothing out of the ordinary in this case to support that kind of discretion. Plaintiff simply took its chances. And, we must not forget that magnanimity bestowed on one litigant must be at the expense of the other party. Today, when appreciable backlogs exist and continue to build in our courts, we should be less cavalier about expending limited resources, ours and litigants'.

I would reverse.